JOHN R. SNYDER

*v.*

CALVIN GRISWOLD.

1. MORTGAGE — *what.* Where a deed is given, absolute on its face, and a written agreement executed the same day, by which the money was to be paid by a certain day, the entire transaction will be considered as a loan, with mortgage security on the land conveyed.

2. SAME — *parol proof to vary agreement.* Parol proof cannot be received to vary such written agreement, the more especially when, in the defeasance, there is an express stipulation to pay the money due by a day named.

3. SAME. All conversations anterior to the examination of the writings are considered as merged in the writings, and they must speak the contract of the parties.

4. SAME—*decree of foreclosure giving interest.* Usury having been established, it was error to allow legal interest on the amount found to be due by the mortgage.

5. SAME — *usury in.* A party seeking to foreclose a mortgage tainted with usury, and the usury being established, a forfeiture of all interest is the necessary consequence. If, however, the mortgagor was seeking relief against a usurious mortgage, then the court could require him to pay legal interest, on the principle that he who asks equitable relief, should do equity, and equity would require him to pay legal interest. In such case, a court of equity could prescribe the terms of its interference.

*Held,* therefore, a decree giving the mortgagee legal interest, the usury being established, was error.

APPEAL from the Circuit Court of LaSalle county; the Hon. MADISON E. HOLLISTER, Judge, presiding.

This was a bill in chancery in the Circuit Court of LaSalle county, filed by Calvin Griswold, against John R. Snyder, to foreclose a mortgage.

It appears by the record that Snyder, being indebted to Griswold in the sum of seventeen hundred and ninety-one dollars, on the 1st day of June, 1859, executed, on that day, to Griswold, a deed for certain lands in this State, and in Minnesota and Iowa, which deed was absolute on its face, but there was, at the same time, an agreement executed by both parties, which is fully set out in the opinion of the court, by which Snyder covenanted to pay the money due, on the 1st day of January, 1864, and Griswold was to make a deed for the premises on such payment being made.

The testimony taken before the master was that of Jacob W. Brown and John R. Snyder, the mortgagor and defendant in the suit, and *Calvin Griswold,* the complainant.

*Brown* testified that Griswold was to take the land absolutely in complete payment of the debt, but Snyder was to have the right to sell it to some one else, and save something out of it if he could within the time prescribed in the contract.

*Snyder* testified to the usurious nature of the loan, and Griswold did not deny it, he only contesting the amount of usury.

The Circuit Court found the transaction was usurious, and rendered a decree for the amount found to be due with legal interest thereon, and ordered a sale of the lands lying in LaSalle county, to satisfy the decree.

Snyder prosecutes this appeal, and assigns for error this decree.

Messrs. GRAY, AVERY & BUSHNELL, for appellant, made the following points:

1. The evidence did not warrant the court below in finding the deeds and contract a mortgage.

The case of *Miller* v. *Thompson*, 14 Ill., 428, lays down the law in such transactions as the appellant claims this to be.

We understand the court in that case to decide that it is a question of fact. as to the understanding and intention of parties at the time, whether a deed shall be considered a mortgage or an absolute conveyance, and verbal testimony is admissible to determine the question.

On this point, J. W. Brown was the only witness, and he is uncontradicted and unimpeached, and no court has authority to disregard his testimony.

He states emphatically that the appellant refused to make a mortgage, but would turn out the property in payment of the debt, which he did, and Griswold accepted it.

2. A defendant in a suit in chancery, who pleads usury, and the plea is proven, is entitled to a forfeiture of all the interest. *Fanning* v. *Dunham*, 5 Johns. C. R., 122; 1 Story's Eq. Jur., 333, sec. 301.

Messrs. GLOVER, COOK & CAMPBELL for the appellee:

1. This was a bill for the foreclosure of a mortgage, filed in the court below by appellee, who alleged in his bill that Snyder, being, on the 1st day of June, A. D. 1859, indebted to him

in the sum of $1,791, executed and delivered to him his deed for certain lands, (one tract in the county of LaSalle, one in Minnesota and one in Iowa;) which deed was absolute on its face, but that there was at the same time a defeasance executed by both parties, in and by which Snyder covenanted to pay the money on the 1st day of January, 1864, and Griswold to execute a deed for the premises upon such payment.

The deed of defefendant having been given for an antecedent debt, and the defeasance containing a covenant to pay the debt, will be construed together and operate as a mortgage. *Delahay* v. *McConnell*, 4 Scam., 158; *Miller* v. *Thompson*, 14 Ill., 431; *Davis* v. *Hopkins*, 15 Ill., 520; *Smith* v. *Sackett*, Ib., 430; *Williams* v. *Bishop*, Ib., 555; *Wynkoop* v. *Cowing*, 21 Ill., 580; *Tillson* v. *Moulton*, 23 Ill, 650; *Brown* v. *Gaffney*, 28 Ill., 156.

The covenant of Snyder might have been enforced by suit at law for the recovery of the money, and he is not excused by the penalty provided in the agreement, which might, at the option of Griswold, have been enforced. *Raymond* v. *Caton*, 24 Ill., 126.

2. The appellant insists that the evidence of Brown shows that it was not the intention of the parties to make a mortgage, but to satisfy the debt.

*First*, The evidence was incompetent, and should not have been admitted.

Brown was allowed to detail the conversation of the parties which took place before it was reduced to writing.

The bargain being reduced to writing, and the agreement signed and sealed by the parties, it could not then be contradicted or explained. *Broadwell* v. *Broadwell*, 1 Gilm., 600; *Lane* v. *Sharp*, 3 Scam., 572; *Harlow* v. *Boswell*, 15 Ill., 57; *Abrams* v. *Pomeroy*, 13 Ill., 136; *Rawson* v. *Curtiss*, 19 Ill., 473; *Farrar* v. *Hinch*, 20 Ill., 649; *Robinson* v. *McGarity*, 28 Ill., 427.

By the sealed contract of the parties, Snyder covenanted to pay the $1,791 January 1st, 1860.

. If the parol evidence is admitted, it will render this covenant absolutely void.

We insist that wherever the defeasance is in writing, *under seal*, this writing is the *only* evidence of the contract of the parties, but a parol defeasance may be shown by parol. *Snapp* v. *Pierce*, 24 Ill., 158. See also, for review of what is evidence in a case of this kind, *Sutphen* v. *Cushman*, decided at the last term.

*Second*, Brown's testimony itself shows that this transaction was a mortgage.

And once a mortgage, always a mortgage. *Wynkoop* v. *Cowing*, 21 Ill., 580; *Tillson* v. *Moulton*, 23 Ill., 656.

The second point made by appellant is, that the court erred in giving Griswold six per cent. on his money. (There is no controversy as to amount except this.)

The court is referred to cases supposed to bear out this view, but this court has already decided the question of interest in our favor in *Heacock* v. *Swartwout*, 28 Ill., 298; *Nichols* v. *Stewart*, 21 Ill., 106.

The case, 28 Ill., 298, above cited, is directly in point. Complainant below sought to foreclose an equitable mortgage, (he holding absolute title, but admitting a defeasance,) and to have the land sold for the debt.

Defendant, among other things, set up usury, and the court say the transaction was a mortgage, *and the complainant had the right to have his money back, with interest at six per cent.*

The case cited and the one at bar are precisely alike.

If the decree were erroneous in allowing interest, this court would modify the decree here so as to require the payment of the $1,300 only, that being the amount of the principal sum unpaid. *Pearsons* v. *Hamilton*, 1 Scam., 415; *Prince* v. *Lamb*, Breese, 300; *Fuqua* v. *Robinson*, 5 Gilm., 128.

Mr. JUSTICE BREESE delivered the opinion of the court:

This was a bill in chancery in the LaSalle Circuit Court to foreclose a mortgage. The facts are substantially, that

appellant, being indebted to appellee, executed to him three several deeds, absolute on their face, one for a tract of land in LaSalle county, one for a tract of land in the State of Iowa, and the other for several tracts of land in the State of Minnesota. Two of these deeds were executed by appellant and wife on the 31st day of May, 1859, and the other on the 1st day of June, 1859, and on the last named day, appellee executed and delivered to appellant the following writing:

Articles of agreement, made this first day of June, in the year of our Lord one thousand eight hundred and fifty-nine, between Calvin Griswold, party of the first part, and John R. Snyder, party of the second part, Witnesseth, that the party of the first part, at the request of the party of the second part, and in consideration of the money to be first paid, and the covenants herein expressed, to be first performed by the party of the second part, hereby agrees to sell and assure to the said party of the second part, by a good and sufficient deed, the following parcels or tracts of land, situated as follows, viz. : One parcel situated in LaSalle county, and State of Illinois : The north half ($\frac{1}{2}$) of the northeast quarter ($\frac{1}{4}$) of section twenty-one (21,) in township thirty-six (36,) north of range two (2,) east of the third principal meridian, containing eighty acres, be same more or less; another parcel of land situated in Cerro Gordo county, and State of Iowa : The southeast quarter ($\frac{1}{4}$) of section one (1,) in township ninety-five (95,) range twenty (20) west, containing one hundred and sixty acres, be same more or less ; and also another parcel of land situated in Pine county, and State of Minnesota: One-half ($\frac{1}{2}$) of the following described pieces of land : The east half ($\frac{1}{2}$) of the southwest quarter ($\frac{1}{4}$) and southwest quarter ($\frac{1}{4}$) of the southwest quarter ($\frac{1}{4}$) and southeast quarter ($\frac{1}{4}$) of the northwest quarter ($\frac{1}{4}$) and southwest quarter ($\frac{1}{4}$) of northeast quarter ($\frac{1}{4}$) and northwest quarter ($\frac{1}{4}$) southeast quarter ($\frac{1}{4}$) of section three (3;) and also north half of west half of northeast quarter ($\frac{1}{4}$) and the north half ($\frac{1}{2}$) of the east half ($\frac{1}{2}$) of the northwest quarter ($\frac{1}{4}$) of section ten (10,) in

township thirty-eight (38,) range twenty-five (25,) containing three hundred and seventy acres in all, meaning to convey to said Snyder one hundred and sixty acres, with the privileges and appurtenances thereunto belonging, or in anywise appertaining; and the said party of the second part, in consideration of the premises, hereby agrees to pay to the said party of the first part, or his attorney, executors, administrators or assigns, the sum of seventeen hundred and ninety-one dollars, as follows, to wit, the whole to be paid on the first day of January, in the year of our Lord eighteen hundred and sixty; also that he will well and faithfully, in due season, pay or cause to be paid, all taxes and assessments, ordinary or extraordinary, that may be levied, assessed or imposed upon the said premises or appurtenances; and it is mutually covenanted and agreed by and between the parties hereunto, that in case the said party of the second part shall make default or fail to make any of the payments above mentioned, at the time and times above limited, (the said time and times of payment being hereby declared to be an assented part of the contract,) or shall fail to perform any of the covenants on his part, then, in such case, this agreement and all the covenants and agreements on the part of the said party of the first part, herein contained, shall, at the option of the said party of the first part, his representatives and assigns, be, and are hereby declared to be null and void, and no longer binding, and all the right or interest, either in law or equity, of the said party of the second part shall cease and be determined, and all the payments which shall then have been made hereon, or in pursuance hereof, shall be absolutely and forever forfeited to the said party of the first part.

In witness whereof, the parties to these presents have hereunto set their hands the day and year first above written.

The defense set up was usury, and that the sale was absolute and not intended as security for the money loaned.

Apart from any other evidence, these deeds, accompanied by this defeasance, constituted the transaction a mortgage

beyond all question, and "once a mortgage always a mortgage" is a familiar principle.

The question then is, can the character of this transaction be changed by parol evidence? It will be observed, in the defeasance, there is an express stipulation by appellant, to pay the money due by a day named. The testimony of Brown, who was examined as a witness on the part of the appellant, is to the effect that it was an absolute sale for the purpose of paying the debt, and that it was not appellant's intention, or that of appellee, to make a mortgage, but to satisfy the debt, by the absolute conveyance of the lands.

We would infer, from the testimony of Brown, that this conversation was prior to the consummation of the contract, and when that was reduced to writing, the writing must control. All anterior verbal conversations are merged in the writing, and that alone must declare the agreement of the parties. The express covenant to pay the money, as contained in the defeasance, cannot be destroyed by the parol evidence of Brown. To allow it to have that effect, would be setting aside one of the most valuable rules and principles of evidence, and open a door for forgeries innumerable. We must hold the transaction was a mortgage only.

It is insisted, also, by the appellant, that the decree is erroneous, in allowing six per cent. interest on the amount due, after disallowing the usurious interest.

A moment's consideration will satisfy any one that there is error in this. The appellant in this proceeding sought to enforce, by the foreclosure of the mortgage, the payment of a note tainted with usury. The fact of usury is established, and the Statute declares a forfeiture of all the interest. Had appellant sought relief from his contract on the ground of usury, it would have been competent for the court, by its decree, to have compelled him to pay legal interest, on the principle that "he who asks equity must do equity," and equity in such case would require he should pay legal interest. A court of equity in such case could prescribe the

terms of its interference. It would be against conscience that the party should have full relief, and at the same time pocket the money loaned, which may have been granted at his own mere solicitation. 1 Story's Eq. Juris., sec. 301.

In *Fanning* v. *Dunham*, 5 Johns. Ch. R., 141, KENT, Chancellor, says, he takes the rule to be that a plaintiff who comes to a court of equity for relief against a judgment at law, or other legal security, or on the ground of usury, cannot be relieved except upon the reasonable terms of paying to the defendant what is really and *bona fide* due to him. On the other hand, if the party claiming under such usurious judgment, or other security, resorts to this court to make his claim available, and the defendant sets up and establishes the charge of usury, the court will decide according to the letter of the Statute, and deny all assistance, and set aside every security and instrument whatever, infected with usury.

The court, therefore, erred in decreeing the payment of six per cent. interest, and for this error the decree must be reversed. The costs of the additional abstract are to be taxed against the appellant.

*Decree reversed.*