JOHN LYNCH

v.

D. B. JACKSON ET AL.

*Mortgages—Deed Absolute in Form—Separate Defeasance—Forfeiture—Bill to Redeem—Limitations—Laches—Notice to Devisee.*

1. A conveyance of lands, absolute in form, made by a debtor to a creditor who, by separate instruments executed at the same time, agrees to re-convey upon payment of the indebtedness, is a mortgage.

2. In the case presented, upon a bill to redeem, it is *held:* That the deed and contract in question are to be construed as a mortgage; that the mortgagee and his devisee, the defendant, having failed to declare a forfeiture and foreclose the mortgage after the expiration of the two years limited in the contract, the mortgagor is entitled to redeem and to an accounting for rents and profits, although his bill was not filed until a little over five years after the note became due; and that the defendant is chargeable with at least constructive notice of the rights of the complainant.

3. In this State it seems that the right of redemption against a mortgagee in possession extends during the statutory period for foreclosure.

[Opinion filed December 8, 1888.]

Appeal from the Circuit Court of Kane County; the Hon. Isaac G. Wilson, Judge, presiding.

Messrs. R. C. Montony and A. C. Little, for appellant.

Messrs. Chas. Wheaton and M. O. Southworth, for appellees.

C. B. Smith, J. This was a bill brought by John Lynch, appellant, against D. B. Jackson and others, appellees, to redeem from a mortgage certain premises described, and for an accounting as to rents and profits.

The facts as disclosed by the record are these: Prior to the 21st day of August, 1877, John Lynch and S. L. Jackson, the father of D. B. Jackson, had business transactions resulting in Lynch becoming indebted to Jackson upon different promissory notes, some of them secured upon the property now in controversy. These notes had become past due, and were doubled up on one or two occasions and renewed, and constantly growing, and no part of principal or interest being paid until, on August 21, 1877, they reached the sum of $1,850, principal and interest. Samuel L. Jackson then notified Lynch that he would wait no longer for his money, and that it must be at once paid or he would throw him out of the property covered by the mortgage in thirty days; Jackson proposed to Lynch to deed him the property in satis-

faction of the debt; Lynch declined to do it, begging further time, which Jackson positively refused to give.

Lynch and Jackson spent the whole of the 21st day of August trying to adjust the matter.

They finally came together and it was agreed that Lynch and his wife would execute an absolute deed for the premises to Jackson, and that Jackson would obligate himself to re-sell the property to Lynch at the expiration of two years, on condition of Lynch paying up the $1,850, with interest. This contract thus executed was as follows:

"Articles of agreement made this twenty-first day of August, in the year of our Lord one thousand eight hundred and seventy-seven, between Samuel L. Jackson of the city of Aurora, Kane County, Illinois, party of the first part, and John Lynch of the same city, county and State aforesaid, party of the second part. Witnesseth, that the said party of the first part hereby covenants and agrees that, if the party of the second part shall first make the payments and perform the covenants hereinafter mentioned on his part to be made and performed, the said party of the first part will convey and assure to the party of the second part, in fee simple, clear of all incumbrances whatever hereafter accruing, by a good and sufficient warranty deed, the following lot, piece or parcel of land, viz.: Situated in the city of Aurora, Kane County and State of Illinois, and described as follows: Commencing at a point twenty-two feet northerly from the southeasterly corner of lot No. 6, in block 5, of the original plat of West Aurora, as recorded, and running westerly sixty feet at right angles with River street; thence northerly along the east line of lands heretofore belonging to W. V. Plum, twenty-one feet; thence easterly to River street; thence southerly twenty-one feet to the place of beginning: And being all and the same this day deeded from the said John Lynch and his wife to me, the said Samuel L. Jackson, and being the store and lands on said River street. And the said party of the second part hereby covenants and agrees to pay to said party of the first part the sum of one thousand eight hundred and fifty-two dollars ($1,852) two years from the date of these presents, with annual interest at ten per cent. per annum, according to the tenor of one cer-

tain promissory note executed by said John Lynch, and paya-
ble to the said party of the first part two years after date
thereof, with annual interest at ten per cent. per annum, dated
the twenty-first day of August, 1877, and for the same sum
above mentioned, to wit, the sum of $1,852.    And in case of
the failure of the said party of the second part to make said
payments of interest or principal, or perform any of the cov-
enants on his part hereby made and entered into, this contract
shall, at the option of said party of the first part, be forfeited
and determined, and the party of the second part shall forfeit
all the payments by him made on this contract, and such pay-
ments may be retained by the party of the first part in satis-
faction and liquidation of all damages by him sustained.    And
it is further mutually covenanted and agreed by and between
the said parties that said party of the first part shall take, keep
and retain the possession, occupancy and control of said lands
and premises during the continuance of this contract, with a
right to rent or lease the same.    And it is further mutually
agreed that the said party of the first part shall pay all taxes
due, past due and to become due on said premises, and also
make all necessary repairs on said lands and premises, and shall,
from the rents received from the same, pay and liquidate such
repairs and taxes, and apply any surplus upon the note above
described, and for any surplus of expenses for repairs and
taxes over the rent that may be received the party of the sec-
ond part shall be liable to the party of the first part as a further
indebtedness under this contract, to be paid, with ten per cent.
interest thereon, at the expiration of the time expressed for
the payment of the principal of said note.

" And it is also mutually agreed that the party of the first
part may get the premises insured for his own benefit, to the
amount not to exceed $1,500, during said two years, and the
costs and expenses of which shall be a further indebtedness
under and subject to the terms of this contract.    It is mutually
agreed that all the covenants and agreements herein contained
shall extend to and be obligatory upon the heirs, executors,
administrators and assigns of the respective parties.

"S. L. JACKSON,    [L. s.]
"JOHN LYNCH,    [L. s.]"

This contract and the deed and notes were all signed and delivered at the same time, all being one transaction. It is manifest that the contract was a mere defeasance to the deed, and that the deed, though absolute in form, was intended only as a security for the debt, and was but a mortgage. The terms of the contract are so clear and conclusive upon that point that no discussion could make it plainer. The law upon this subject is so well settled that the citation of authorities in its support seems but a useless ceremony, and we shall content ourselves with the citation of a single case—Snider v. Griswold, 37 Ill. 216.

Indeed, we do not understand appellees as making any serious contention that this was not a mortgage. They rest their defense upon the ground of *laches* and estoppel. S. L. Jackson took possession, made repairs, paid the taxes and received the rents. At the end of the two years Lynch failed to pay the note. Neither he nor S. L. Jackson gave the matter any attention; Jackson remained in possession until his death, which occurred about one year after the note became due. About a month before his death he made a will, dividing his property among his children, and gave this property in dispute to his son, D. B. Jackson, who immediately went into possession and remained in possession, treating the property in all respects as his own until this suit was brought.

Appellant Lynch filed this agreement of defeasance for record immediately after it was made and delivered to him. Taking the property as a gift, and chargeable also with notice of what the recorded contract contained, D. B. Jackson holds the property precisely as his father held it, and can claim no exemptions or rights in relation to the property which his father could not have claimed. This contract notified him that he was holding and improving the property and collecting rents as a mortgagee whose duty it was to apply all above repairs and taxes on appellant's note. He went into possession under this mortgage and remained in possession with full legal knowledge of the obligation to apply all in excess of taxes, interest and repairs on this note. He can not claim that he was innocently and ignorantly making these improvements

and that appellant was standing by and permitting him to improve his property without informing him of his rights. Appellant contracted in this defeasance that his note might be paid by the rents unless Jackson elected to declare a forfeiture on failure to pay the note.    There is no proof that such a forfeiture was ever declared.    It is a maxim of the law that "once a mortgage always a mortgage," until it is satisfied. Miller v. Thomas, 14 Ill. 428.

If this property had once passed into the hands of a stranger for a valuable consideration without actual or constructive notice of this defeasance, then very different questions would arise.    But here the constructive notice to appellee of the rights of appellant is clear, and the strong probabilities are that he had actual notice of the nature of the transaction between his father and appellant.    But constructive notice is as effectual to protect appellant's right as actual notice.    Appellee's position, then, as well as that of his father before him, was simply that of a mortgagee in possession, nothing more or nothing less; the father with actual contract knowledge of that fact, and the son, being but a volunteer, took it chargeable with its burdens in his father's hands, with the added constructive knowledge the record gave him; that the only right he had in the property was that of a mortgagee, and that under the defeasance he might declare a forfeiture and foreclose the mortgage, or he might waive the forfeiture and continue in possession, under the terms of the defeasance, until the note with its accruing interest was paid with the surplus rents over taxes and repairs, and then surrender back the premises to appellant.    This, in our judgment, was the clear legal effect of that defeasance.    Finding, as we do, that this was a mortgage, the only remaining question for us to determine is, has anything intervened to prevent appellant having the right to redeem?    The appellee urges that he has lost this right by his delay in bringing his bill and by estoppel.

In this State no definite rule was ever laid down as a limitation of time upon the right of mortgagors to redeem from mortgagees in possession until the case of Locke v. Caldwell, 91 Ill. 417, which came before the Supreme Court in 1879.    Prior to

that time the cases involving that question seemed to be deter-mined, not so much upon any statute. of limitations as upon the circumstances and equities surrounding each particular case. In the case above referred to, the court holds that the law of limitations is that the right of a mortgagee to foreclose and that of a mortgagor to redeem are mutual. The question there arose as to the right of a mortgagor to redeem a certain town lot, and also certain other lands, upon a bill filed for that purpose. The court use this language:

"It is the well settled general rule that twenty years' posses-sion by the mortgagee, without account or the acknowledgment of any subsisting mortgage, is a bar to the equity of redemption, unless the mortgagor can bring himself within the provisions of the statute of limitations. Demarest v. Wynkeep, 3 Johns. Ch. 129. In Harris v. Mills, 28 Ill. 44. this court has held that when the note secured by the mortgage was barred after sixteen years, the mortgage would also be barred.

"The general rule which has been stated, as to twenty years possession by the mortgagee barring the equity of redemption, is reciprocal, and the mortgagee will be equally barred by the lapse of time."

In this case the court quotes with approval the language of Chancellor Kent in Moore v. Cable, 1 Johns. Ch. 386, where he declares the rule to be, that twenty years actual possession by the mortgagee is necessary to bar the equity of redemption in the mortgagor. And the same doctrine was held in Bollinger v. Choteau, 20 Mo. 89. There a bill to redeem, was filed thirty-six years after the mortgage was made, and sixteen years had elapsed after the mortgagee had taken possession.

"In general, the respective rights of the mortgagee and mortgagor, with regard to foreclosure on the one hand and redemption on the other, are treated as mutual; that is, the existence of the former is held to involve that of the latter, and *vice versa,* and the fact that the one can not be legally enforced under the circumstances, is regarded as sufficient to preclude a claim for the other. It is said the right to redeem and foreclose are reciprocal and commensurable. 2 Hilliard on Mort., Sec. 2."

And in this same case the court refused to apply the doctrine of staleness and *laches* which was there urged, as it is urged here, under the rule laid down in 2 Story's Eq. Jur., Sec. 1520, as being a defense peculiar to courts of equity and founded upon mere lapse of time and the staleness of the claim in cases where no statute of limitations directly governs the case.

We understand the above case of Locke v. Caldwell, from which we have quoted, as holding that the right of redemption is not barred by a less time than the right of foreclosure, which, under the statute in force when the note in question here was made, would be ten years. This bill was filed in a little over five years after the note was due.

Counsel for appellee cite us to a great number of cases where equitable relief has been denied on the ground of *laches*, and to many cases where the right to redeem has been refused for the same reason. It is said that Bush v. Sherman, 80 Ill. 160, is an authority against appellant. In that case the mortgagor executed a trust deed with a power of sale, and then voluntarily went into the great rebellion and joined himself to the enemies of his country, and while absent the premises were sold under the power; when he returned after the war, he filed a bill to set aside the sale, alleging that the power was not executed in strict conformity with the deed of trust. There was no question of the right of redemption involved. The court held that his delay was inexcusable for the purpose of setting aside a sale for mere irregularity.

In Cleaver v. Green, 107 Ill. 68, it was held that five years lapse of time would bar a right to set aside a sale made under a trust deed with a power of sale for mere irregularities in the sale. No question of the right of redemption was made, further than that such right would result from setting aside the sale.

In Beach v. Byers, 93 Ill. 295, the bill was to declare a trust and enforce specific performance, and complainant's *laches* was held a bar.

In Williams v. Rhodes, 81 Ill. 571, the bill was to set aside an execution sale after the lapse of five years, and the relief was denied on account of the lapse of time.

In Maher v. Farwell, 97 Ill. 56, the bill was filed as in the case at bar to redeem from an alleged mortgage in the shape of a deed absolute on its face. The bill set up a parol agreement, made about the time of the conveyance, between Maher and Farwell, to the effect that a deed absolute should be made to Farwell, and that upon the payment of a note of $1,700 which Farwell held against Maher, the land should be conveyed back to Maher; the bill to redeem was filed some thirteen years after the date of the deed and the alleged parol agreement, and the relief was denied. The court in that case seems to place the chief ground for refusing the relief prayed for on the failure of Maher to prove his bill by clear and satisfactory evidence after so great a lapse of time. It is true the court say that Maher had shown no sufficient reason for the long and extraordinary delay in bringing his suit, and until the facts connected with the transaction had faded from the memory of the witnesses, or the witnesses died or left the country.

So far as can be gathered from this case, the attention of the court had not been called to its previous deliberate judgment in Locke v. Caldwell, 91 Ill. 417. The remark as to the lapse of thirteen years seems to be incidental to the main point of the decision, holding that the parol defeasance was not sufficiently proven, and that it was dangerous to place much weight on the memory of witnesses after the lapse of so many years. These observations of the court could have no application where the defeasance was in writing and under seal, and where there could be no question about the fact of the defeasance being made as in the case before us. That and this case, in that important respect, are wholly different. But, aside from the grounds upon which we have so far considered the case and found that appellee has the right to redeem, we are not disposed to hold that appellant would not have the right to redeem from the mere lapse of time. It is evident from the record that his financial condition made it difficult, if not impossible, for him to raise so large a sum of money, and that for him to have made application to redeem without the money to do so would have been an idle ceremony. He

might well rest on the presumption that his debt was being paid by the rents, and that it was much better for him to let it remain in that condition until the debt was paid, than for him to repossess himself of it, and again begin the struggle to pay the debt himself, which he had so signally failed to do before he executed the mortgage and let the mortgagee into possession. We think the delay was not so great nor unreasonable under the circumstances as to justify a court of equity in now withholding the right to redeem on the mere ground of *laches*, even if there were no better ground upon which to place the right to redeem.

For the reasons above given we think the court erred in dismissing complainant's bill. The decree will be reversed and the cause remanded, with directions to the court to set aside the order dismissing the bill and to grant a decree allowing complainant to redeem, and to refer the case to the master to state an account of the amount due on the note, and also of the rents and profits received by the appellees, together with taxes and insurance paid, and the reasonable and necessary repairs made, and at the end of each year to credit the note, with the surplus, if any, of rents over taxes, insurance and necessary repairs, etc., and for each succeeding year. If there is any balance found due complainant, he will be entitled to a decree for that amount, and if there be any balance found due appellant, he will be entitled to a decree against the party having had possession of the property for such balance.

*Reversed and remanded.*