FIELSTRA v. MID-AMERICA ENGINEERING CORPORATION.

1. Automobiles—Head-On Collision—Place of Accident—Nonjury Case—Evidence.

Finding of trial court in nonjury action arising from collision between southbound plaintiff motorist, traveling at speed of 30 to 35 miles an hour in midmorning of a clear dry day early in December, and defendants' northbound endloader vehicle, that collision occurred in westerly portion of road which curved to southeast *held*, supported by evidence.

2. Appeal and Error—Nonjury Case—Preponderance of Evidence.

The Supreme Court does not reverse the decision of a trial judge on a question of fact in a nonjury action at law unless it appears the determination was contrary to a preponderance of the proof.

Appeal from Muskegon; Beers (Henry L.), J. Submitted January 12, 1961. (Docket Nos. 33, 34, Calendar Nos. 48,850, 48,851.) Decided February 28, 1961.

References for Points in Headnotes
[1] 5A Am Jur. Automobiles and Highway Traffic § 1109.
[2] 3 Am Jur, Appeal and Error § 896.

Case by Jacob Fielstra and Preferred Insurance Company, a corporation, subrogee, against Mid-America Engineering Corporation and Martin A. Perttu for personal injuries and property damage resulting from collision of automobile and specialized construction equipment being operated on highway. Action by Iza Fielstra against same defendants for personal injuries. Cases consolidated for trial and on appeal. Judgments for plaintiffs. Defendants appeal. Affirmed.

*Stribley & Rude* .(*Arthur M. Rude,* of counsel), for plaintiffs.

*Sessions & Barlow,* for defendants.

Carr, J. On December 2, 1957, at approximately 9 o'clock in the forenoon plaintiff Jacob Fielstra was driving his Chevrolet automobile in a southerly direction on M-20 in Muskegon county. His wife was a passenger in the car. At the same time defendant Perttu, an employee of the other named defendant, was operating a vehicle known as an end-loader in a northerly direction on said highway. The 2 vehicles collided, as a result of which plaintiffs' automobile was damaged, and both plaintiffs were injured. They instituted separate actions against defendants to recover damages, plaintiff Preferred Insurance Company joining with Mr. Fielstra in his case as subrogee to the extent of the claim resulting from the property damage. The cases were consolidated for trial in circuit court and were heard before the circuit judge without a jury. Judgments in favor of plaintiffs were rendered, and defendants have appealed.

The pavement at the place where the collision occurred was 20 feet in width, consisting of a lane for northbound traffic 10 feet in width and a like

lane for southbound traffic. At the time of the accident the weather was clear and the pavement dry. It was the claim of the plaintiffs on the trial that defendants' equipment had crossed the center line of the pavement, that such action constituted negligence under the circumstances, and that the collision was the proximate result of the act of defendant Perttu, the driver of defendants' equipment. Defendants disputed plaintiffs' claims, contending that the endloader was on its proper side of the highway, that it did not at any time cross the center line, but that, on the contrary, plaintiffs' automobile was driven on the wrong side of the highway, and that the collision resulted therefrom.

Plaintiff Jacob Fielstra testified before the circuit judge that he was operating his automobile prior to the accident at a speed of 30 to 35 miles per hour. The defendant Perttu claimed that he was driving the endloader at approximately 10 to 15 miles per hour at the time of the collision. It may be noted in this connection that a witness for defendants, who was driving a pickup truck behind the endloader, estimated the speed of defendants' equipment as between 15 and 20 miles per hour. Said witness further testified that he had followed the endloader for approximately 2-1/2 miles, seeking an opportunity to pass it, and that according to his observations defendant Perttu did not at any time cross the center line of the road. Appellants contend in effect that the failure of the trial judge to accept as correct the testimony of their witness was erroneous and resulted in the rendering of judgments not in accord with the preponderance of the evidence.

At the place where the collision occurred the highway curved to plaintiffs' left as they proceeded in a southerly direction. Their automobile was thrown into a roadside ditch and tipped over on its side. Defendants' equipment lost the left forward wheel,

both the machine and the wheel coming to rest on the west side of the highway. Shortly after the accident an officer of the sheriff's department of the county made an investigation and discovered, as he testified, a certain amount of debris, sand or clay, that had fallen from the undercarriages of the 2 vehicles as they collided. Such material was on the west side of the center line of the road. The same witness testified to a gouge or hole in the pavement, also on the west side of the center, that apparently had been made by the axle of the endloader after the wheel had been knocked off. This testimony the trial judge accepted as tending to establish that the impact between the 2 vehicles occurred on the plaintiffs' side of the center line. Such testimony was corroborated, in part at least, by that of another officer.

It appears from the testimony in the case that defendants' equipment, the endloader, was designed to be operated in either direction. The engine was placed at one end and at the other a large shovel, also referred to in the testimony as a bucket, designed for use in either moving earth or in excavating operations. The cab in which the driver was seated was in the middle. The seat which defendant Perttu occupied at the time of the accident was approximately 28 inches square, without arm rests. On the occasion in question the motor was at the northerly end of the equipment and the driver, as he claimed, was sitting facing the center line of the road and looking over his right shoulder as he proceeded. He was aware of the pickup truck behind him, and apparently anticipated that the driver might attempt to pass the endloader.

Defendant Perttu testified that as he was proceeding around the curve and looking in a northerly direction he saw the Fielstra automobile coming around the curve approximately 600 feet distant. He

then turned his head to the south for the purpose of observing whether the driver of the pickup truck was preparing to pass. He indicated in his testimony that he realized that with the approach of the automobile from the opposite direction such attempt would not be feasible, and claimed that, if he discovered that the passing operation was contemplated, he intended to signal to the driver not to make the attempt. He claimed further that he concluded that the driver of the following vehicle was not preparing to pass the endloader, and thereupon he looked back to the north. The following excerpt from the testimony appears to be significant:

"*Q.* Then you turned back around to look in a northerly direction again, did you?
"*A.* That's right.
"*Q.* And that you say about the time you looked around the accident happened?
"*A.* That's right. I noticed the car coming right towards me.
"*Q.* How far was the Fielstra vehicle from you at that point when you looked back around?
"*A.* About 20, 30 feet.
"*Q.* 20 or 30 feet. And on which side of the road was the Fielstra vehicle then?
"*A.* I couldn't tell you that.
"*Q.* You couldn't say. In other words, there wasn't anything unusual about it when you saw it at that point 20 feet from you?
"*A.* The only thing I noticed unusual he was coming at me.
"*Q.* By coming at you, had he crossed the center line, yet?
"*A.* Well, I knew where I was at, so that in order to hit me he had to.
"*Q.* But you didn't see him come across the center line. did you?
"*A.* No, I didn't.

"*Q.* So that when you say he came across the center line that's just your opinion based upon where you thought you were, is that right?

"*A.* That was my opinion based upon where I knew I was on my side of the center line.

"*Q.* All right. But you say that between a second or two immediately before this accident you were looking in a southerly direction toward that pick-up?

"*A.* Yes, I was, just glanced."

It must be borne in mind that defendants' equipment was traveling around the curve at the time the driver looked back for the purpose of observing the pickup truck. Apparently his observation was of sufficient length to enable him to reach a definite conclusion that the driver did not contemplate attempting to pass at that point. According to defendant Perttu's testimony, when he had first looked back to the south the Fielstra car was several hundred feet distant; when he looked again to the north it was within 20 to 30 feet from him. At the speeds that the vehicles were proceeding the collision must have occurred in less than 1/2 second. It is a fair inference that during the interval that defendant Perttu was looking to the south he was not in position to note the precise course of his vehicle.

The positions of plaintiffs' automobile and the endloader following the collision tend to corroborate plaintiffs' claims as to how the accident occurred. Photographs were introduced in evidence on the trial in circuit court, and have been returned to this Court as a part of the original record, showing rather clearly the damage to each vehicle. The nature of such damage is not conclusive, but considered in connection with other proofs it tends to support the conclusion of the trial judge as to where and how the collision occurred.

It is apparent from the opinion filed by the circuit judge that he carefully considered the testimony of the witnesses in the case, weighing such testimony in the light of undisputed physical facts and with due regard to such facts. Our consideration of the record leads us to the conclusion that the judgments entered were fully supported by the proofs. In a law action tried before a judge without a jury we do not reverse unless it appears that the disposition of the controversy was contrary to a preponderance of the proof. *Allen* v. *Currier Lumber Company,* 337 Mich 696; *Moller* v. *Sirhal,* 342 Mich 391; *Zarzecki* v. *Hatch,* 347 Mich 138 (62 ALR2d 284).

The judgments from which the defendants have appealed are affirmed.

DETHMERS, C. J., and KELLY, SMITH, BLACK, EDWARDS, KAVANAGH, and SOURIS, JJ., concurred.