(No. 14769.—Decree affirmed.)

ROBERT WEBER *et al.* Appellants, *vs.* THE ALUMINUM ORE COMPANY, Appellee.

*Opinion filed October 21, 1922.*

1. EASEMENTS—*easement can arise only by grant or prescriptive use.* An easement in land cannot be created by parol but only by grant or prescription which presumes a grant.

2. SAME—*verbal permission or permissive use cannot ripen into prescriptive right.* A verbal permission or permissive use of property will not ripen into a prescriptive right, however long such permissive use is enjoyed.

3. SAME—*what does not show permanent easement for alley.* In accepting a deed all prior conversations and understandings become merged in the deed, which is the only contract binding between the parties; and where the deed makes no mention of an alley over adjoining property, an unauthorized oral statement of the president of the syndicate which was the grantor and owner of all the adjoining property, that there was an alley and that all the property was platted and that the plat would be recorded, can not be relied upon to establish a permanent easement for the alley.

4. CORPORATIONS—*unless granted by corporation, president has no greater power than directors.* Unless granted by the corporation the president has no greater power than any director of the corporation, except as presiding officer at the meetings.

APPEAL from the Circuit Court of St. Clair county; the Hon. GEORGE A. CROW, Judge, presiding.

W. E. KNOWLES, for appellants.

KRAMER, KRAMER & CAMPBELL, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

Appellants, Robert Weber and Theresa Weber, filed a bill in the circuit court of St. Clair county praying for an injunction against the permanent closing of an alleged alley and also against the threatened tearing down of their barn, and praying that they be decreed to have a permanent ease-

ment in a strip of ground twenty feet in width as a means of ingress and egress to and from their property; also praying for the removal of a fence across the alleged alley. The cause was referred to a master in chancery, who heard the testimony and made a finding to the effect that appellants' barn projected over the land purchased by appellee six feet, but that appellants had been in possession of the building at the time of the purchase by the appellee and that such possession was sufficient to put appellee upon notice as to appellants' rights therein, and recommended that appellee be enjoined from interfering with the barn, and also finding that appellants had no easement in the alley, and recommended that each party pay half the costs. Both parties filed objections to the master's report. The court sustained objections of appellee as to the acquiescence by appellee in the use of the barn on its premises, and held that such use was merely permissive, amounting only to a license, and entered a decree dismissing the bill for want of equity at appellants' costs. This appeal followed.

The evidence shows that just outside the limits of the city of East St. Louis, east of Thirty-fifth street and south of Missouri avenue, is located a tract of land containing seventy acres, coming up to the intersection of those two streets; that said tract was originally farm land, called the Joyce tract; that several persons joined themselves into a syndicate and purchased the tract, and entered into an agreement making a trust company of East St. Louis, now called the Southern Illinois Trust Company, trustee, to act for the syndicate and to mortgage, sell and dispose of the land in a certain way. The evidence also shows that no plat of the seventy acres or of appellants' property was ever put of record. The evidence tends to show that shortly after the purchase of the land by the syndicate a plat was made of a portion of the property, subdividing it into lots, blocks, streets and alleys, and that in 1905 appellants purchased through Sexton, the president of the trust company,

a portion of the land immediately adjoining Missouri avenue and Thirty-fifth street; that before the deed was made for the property appellants had several interviews with Sexton, who was not only the president of the trust company but also a member of the syndicate, with reference to the platting of the land, and that Sexton exhibited a plat to Weber showing an alley immediately adjoining the property Weber proposed to purchase and connecting the property with Thirty-fifth street. It appears from the evidence that later, after several talks with Sexton, appellants purchased the land with the understanding, as they claim, that there was an alley located immediately adjoining the property so purchased and connecting it with the then public highway, now known as Thirty-fifth street; that by the trust agreement creating the syndicate and turning the property over to the trust company the company was authorized to plat the property and lay out the same into streets and alleys before selling it; that a plat of the property was shown not only to appellants but to other proposed purchasers of portions of the property by Sexton, the agent of the trust company, who was attempting to sell the land; that before purchasing this property, in an interview appellants had with Sexton, the proposed plat was shown to appellants and Sexton stated that he would record the plat in a few days. The wife and oldest daughter of Weber testified that they heard such a statement made by Sexton before the property was purchased by appellants, and there is evidence by Dr. Wilhelmj, who was a member of the syndicate, to the effect that he saw Sexton show such plat of the proposed subdivision of the property and heard a statement by Sexton that the plat was to be recorded. Thereafter appellants purchased a tract from the syndicate, the deed describing the property by metes and bounds, fronting 225 feet on Missouri avenue and 136 feet on what is now Thirty-fifth street. The only reference made in the deed to the subdivision of the property is to the effect that it was made with

the understanding that when the land is platted, the grantor, its successors or legal representatives, may include in the plat the property conveyed by the deed, along with the adjoining property, and may subdivide the same into lots of 25-foot front, with a 20-foot alley in rear of the premises.

Several witnesses testified that there was a roadway, with wagon tracks, in the rear of the lots purchased by appellants, before they purchased the land; that coal was hauled into sheds by way of the alley or roadway during the time the Webers owned it and when the sheds were rented to other persons. There is also testimony to the effect that the so-called alley was not used as an alley until the Webers took possession of the property; that this roadway, or so-called alley, was before that used by the farmers as a place to turn about when they were cultivating the land. There is also testimony that some dirt was at one time removed from the alley by appellee, and that when Weber called the matter to the attention of the company's superintendent of construction, he replied that the company had no business to remove the dirt and that he would have it filled in, and did so. The superintendent of appellee denied that he had this conversation with Weber, but testified that he had a hole at the rear of the lots filled up.

Several years after appellants purchased the property, appellee purchased all of the land of the syndicate in the 70-acre tract except the portion theretofore conveyed to appellants. After such purchase appellee had all its land fenced in, including the alley in dispute. It appears from the evidence that Weber came to the president of appellee and said he would like to have appellee leave an opening in the back of the property so he could go into his sheds, and that the president told Weber that the company had bought the property without reservations of any kind and could not permit Weber to use it; that Weber then wanted the company to put in a gateway so that he might use the alley without the general public having access to it, to which the

president of the company refused consent; that Weber told him that the former president of the syndicate and agent, in selling the property, had promised that when the property was platted there would be an alley there.

From the testimony in the record it would appear that there was a plat, which might be called a working plat, but which was never an authorized or recorded plat of the 70-acre tract. Whatever representations were made by Sexton as to the platting of the property, they are not shown to have been authorized by the syndicate. At least no formal action was ever taken by the trust company or the syndicate, so far as the platting of this land or the alley was concerned, that in any way affected the property purchased by appellants in said tract.

The trial court found, as did the master, that there was no easement held by appellants in the property as to the alley, and the decree found any easement that was held by appellants as to the barn was only permissive. An easement in land cannot be created by parol but only by grant or prescription which presumes a grant. (*Girard* v. *Lehigh Stone Co.* 280 Ill. 479.) The evidence tends to show that the Webers, after the purchase and occupancy of the property and before the tract was fenced in by appellee, used a strip of land back of their barn and sheds as a roadway, and that possibly this same strip had been used as a turn-road or roadway before the land was purchased by the Webers; but this use after the purchase is shown only to have been a permissive one and without written authority to use the land as an alley. This court has held that a verbal permission or permissive use of property will not ripen into a prescriptive right, however long such permissive use is enjoyed. (*Bontz* v. *Stear*, 285 Ill. 599.) Under the circumstances shown in the record, there being a frontage of the land of appellants both on Thirty-fifth street and Missouri avenue, appellants have an outlet to a highway from their own lots without reference to access to this disputed

alley, and therefore it is not required that this roadway or alley be held to be a way of necessity, as held in *Gilfoy* v. *Randall,* 274 Ill. 128. There is no conveyance shown of record mentioning the existence of the disputed alley in this case, as in the case of *Gulick* v. *Hamilton,* 287 Ill. 367, and as also shown in *Hankins* v. *Hendricks,* 247 id. 517. The most that can be said in support of appellants' position is that Sexton, the president of the trust company and a member of the syndicate, agreed that there should be such an alley, but that he, as president of the corporation, had no greater power than any director of the corporation, except as presiding officer at the meetings. Unless it was granted by the corporation he had no greater power as to the matters under discussion than was given to any member of the board of directors. (14 Corpus Juris, 93, 356.) The deed by which appellants obtained this property contained no description of an alley at the rear of the barn. It conveyed the property merely by metes and bounds. In accepting this deed all prior conversations and understandings with reference to the property conveyed became merged in the deed, and it was the only contract binding between the parties. (*Snyder* v. *Griswold,* 37 Ill. 216; *Ely* v. *Ely,* 80 id. 532.) Appellants testified that Sexton, for the trust company, agreed that the plat should be recorded in a few days, but no official action of the trust company appears to have been taken with reference to the same. There is testimony on behalf of appellee that no action as to the platting and recording of the plat was ever taken, one reason suggested by a member of the syndicate being that the property was not platted and recorded because it was thought it would render the trust company subject to greater taxation. It seems clear from the record that Sexton was not authorized by the trust company to plat the property or record the plat.

The manifest weight of the evidence as to the real questions in dispute in this case supports the decree of the cir-

cuit court, and it appears no serious error was made during the trial as to any ruling on the law. The decree of the circuit court will therefore be affirmed.

*Decree affirmed.*