(No. 36496.—

JAMES R. FITZPATRICK *et al.*, Appellants, *vs.* ALLIED CONTRACTING COMPANY, Appellee.

*Opinion filed March 23, 1962.—Rehearing denied May 23, 1962.*

HALFPENNY & HAHN, of Chicago, and JAMES R. REILLY, of Springfield, (HAROLD T. HALFPENNY, RICHARD F. HAHN, JAMES F. FLANAGAN, and MARY M. SHAW, of counsel,) for appellants.

STEVENS, HERNDON, NAFZIGER & MOHAN, of Springfield, (JAMES T. MOHAN, of counsel,) for appellee.

Mr. JUSTICE SOLFISBURG delivered the opinion of the court:

Plaintiffs, James R. Fitzpatrick, Florence C. Fitzpatrick, Thomas D. Burton and Mary E. Burton have appealed directly to this court from a decree of the chancellor of the circuit court of Sangamon County, confirming the findings of fact of the special master's report and granting defendant and counterclaimant, Allied Contracting Company, specific performance of an alleged agreement to reconvey land. The special master found that defendant and counterclaimant, Allied Contracting Company, was entitled to specific performance and a reconveyance upon payment to plaintiffs of the amount by which the improvements made by them enhanced the value of the land; or alternatively, defendant-counterclaimant might sell the land to plaintiffs at its fair cash market value as of December 1955. While the chancellor held that defendant-counterclaimant was entitled to specific performance and ordered a reconveyance of the property to it, he held that plaintiffs were not entitled to reimbursement for their improvements upon the premises.

The defendant-counterclaimant, Allied Contracting Company, a corporation, (previously having the corporate

name Rantoul Development Company and hereinafter referred to as "Allied") had two officers and directors, by name Adolph Lubin and M. D. Barker, who are Springfield businessmen, engaged in the development and sale of real state. James R. Fitzpatrick, the principal plaintiff, is also a Springfield businessman with wide business interests, including real-estate promotion and development. Fitzpatrick and Messrs. Lubin and Barker had had a "feud" of many years' duration. In November 1946, while in a Springfield restaurant, Adolph Lubin encountered Fitzpatrick who stated that he had a piece of land on the south side of the city on which he planned to build a memorial park in memory of his recently deceased son and that there was another piece of land (the tract involved in this litigation) located to the north of his land and owned by Allied which he needed to acquire in order to do with the park what he wanted to do. Lubin replied that the land was not for sale but that he was quite sure that he and Mr. Barker, his business associate, would not stand in the way of such a project and if that was what Fitzpatrick wanted to do, he thought Allied would be willing to make a gift of the land. Lubin testified that Fitzpatrick refused the land as a gift on the grounds that it would not be his memorial to his son unless he bought it, while Fitzpatrick's version was that he did not refuse the gift until after he consulted his wife. Later the parties agreed to have a mutual acquaintance appraise the land for the lowest selling price that could be justified. The appraiser arrived at a figure of $1,800 for the tract and this became the cash consideration for the sale. The balance of the negotiations was handled by M. D. Barker on behalf of Allied.

Barker advised Fitzpatrick that Allied planned to put a restriction on use and a right to repurchase in the proposed deed from Allied to Fitzpatrick. However, at the latter's request, the officers of Allied after consulting with its attorney agreed to place such restriction and right to re-

purchase not in the deed but in a separate document. This document reads in pertinent part as follows:

> "Springfield, Illinois
> December 1, 1946
>
> Rantoul Development Company
> 300 North 9th Street
> Springfield, Illinois
> Gentlemen:
>
> As an inducement to you to sell and convey to Florence C. Fitzpatrick the property hereinafter described and as part of the consideration for such sale and conveyance, we hereby undertake and agree with you, and your successors and assigns, that if said property, within twenty-five years from the date of your conveyance to said Florence C. Fitzpatrick, is used for any purpose other than a baseball park or grounds we will cause the same to be returned and reconveyed clear of encumbrances to you, or to your successors or assigns, for the sum of $1,800.00 to be paid to me, or my order, upon reconveyance of said property to you. In addition to baseball, athletic and recreational activities are also satisfactory.  *  *  *  [Then follows a legal description of the real estate in controversy.]
>
> Very truly yours,
> /s/  Florence C. Fitzpatrick
> Florence C. Fitzpatrick
> /s/  James R. Fitzpatrick
> James R. Fitzpatrick"

There is no dispute that James R. Fitzpatrick and his wife, Florence C. Fitzpatrick, executed and delivered the above instrument to the officials of Allied (then Rantoul Development Company). The dispute relates to the time and circumstances of its execution and delivery. Fitzpatrick contends that this document was delivered on or about December 2, 1946, and then cancelled or rescinded within a day or two when, according to Fitzpatrick, the initial deal looking toward a gift of the land for a memorial park did not materialize because of the objections of his wife. Allied contends that this document was received on or about December 17, 1946, with a covering letter from Fitzpatrick, and thereafter Barker delivered a warranty deed to the real estate to one of Fitzpatrick's employees and in turn received the $1,800 consideration.

The parties do not disagree that, on or about the date it bears, a warranty deed in the usual form dated December 17, 1946, properly executed by M. D. Barker, Jr. and M. D. Barker, Sr. on behalf of Allied (then Rantoul Development Company) to Florence C. Fitzpatrick was delivered to one of Fitzpatrick's employees. Fitzpatrick urges that the document relating to use and repurchase, dated December 1, 1946, was then no longer a part of the transaction, that its return to Fitzpatrick had been requested by letter; that Barker had agreed to destroy it, and that the ultimate purchase was not for a memorial park at all. Allied, on the other hand, contends that the document dated December 1, 1946, was very much an integral part of the transaction, that no one had requested its return, that the sale was for a memorial park, and that the conduct of the parties substantiates these contentions. The deed in question, which admittedly contained no restrictions, bears a recorder's stamp of December 19, 1946. The check in payment of the property bears a stamp of the bank, indicating a date of December 19, 1946. Neither party fixes the time nor the circumstances of the introduction of the question of placing a restriction on the use of the land. Both are vague as to the exact times and content of their conversations. It seems evident that Fitzpatrick was mistaken as to the date of execution and attempted recission of the letter. The dates he fixed thereafter of December 2 and 3 were at a time when the proposed transfer was to be a gift. Nevertheless, the letter recited a consideration of $1800, the appraisal figure which was admittedly not disclosed to him until a week later. The finding of the master, in which the chancellor concurred, that the document was not validly rescinded is supported by the record.

Fitzpatrick argues that in any event the document dated December 1, 1946, was superseded or "obliterated" by, or merged in the deed from Allied to Fitzpatrick. Allied's position is that the document dated December 1, 1946, is

an enforecable agreement, that it and the deed should be construed together, the latter in no way nullifying the effect of the former. Allied contends that the letter dated December 1, 1946, was by its terms not some preliminary offer or negotiation, stating itself to be "as an inducement * * * and as part of the consideration for such sale and conveyance, we hereby undertake and agree * * *." The document was not a preliminary offer or negotiation, so that the legal proposition that all preliminary negotiations to a conveyance of property are merged in the conveyance itself cannot apply here so as to nullify the effect of the letter, for the letter was found to be a collateral document, supplementing the provisions in the deed. Where the parties intend that two instruments shall be executed as part of the same transaction and taken and construed together as one agreement, they will be given effect as such. *Baltimore and Ohio Southwestern Railroad Co.* v. *Brubaker,* 217 Ill. 462, 467; *Clodfelter* v. *Van Fossan,* 394 Ill. 29, 34.

In *Chicago Title and Trust Co.* v. *Wabash-Randolph Corp.* 384 Ill. 78, 87 the court stated: "The principles in reference to merger are well settled. If the terms of a contract for sale of real estate are fulfilled by delivery of the deed, there is a merger, (*Weber* v. *Aluminum Ore Co.* 304 Ill. 273,) but if there are provisions in the contract which delivery of the deed does not fulfill, then the contract is not merged in the deed as to such provision and the contract remains open for the performance of such terms. (*Trapp* v. *Gordon,* 366 Ill. 102; *Biewer* v. *Mueller,* 254 Ill. 315; *Shelby* v. *Chicago and Eastern Illinois Railroad Co.* 143 Ill. 385.)"

After acquisition of the land by Fitzpatrick it was used as a neighborhood playground and a sign to that effect was permitted by plaintiffs to be erected and remain there. In July or August 1951 local newspapers carried stories that the land was to be developed for subdivision purposes. Fitzpatrick retained a surveyor to survey the property in

1954, which was completed in the spring of 1955 and the plat recorded June 28, 1955. Building in the subdivision was commenced in June 1955. By September 1955 it was improved with one or more streets and sewers, three small dwellings were constructed and a fourth begun. On August 17, 1955, the premises were conveyed by Mrs. Fitzpatrick to Thomas D. Burton and Mary E. Burton, son-in-law and daughter of the Fitzpatricks.

Allied recorded the letter of December 1, 1946, when, according to Lubin, officers of Allied noted a flood of publicity in the newspapers that the property in question was to be developed for a residential subdivision. Allied did not then, or ever, personally advise the plaintiffs of their intention to enforce the agreement, although there was evidence that Fitzpatrick had learned of its recording by June 1955. They stated their intention to assert their claim for the first time in the Fall of 1955, and then only when Fitzpatrick requested that the agreement be removed from the record. The request was refused and on December 6, 1955, a representative of Allied tendered $1800 to the Burtons and demanded a deed to the premises.

On December 7, 1955, plaintiffs filed an action at law, No. 1227-55 in the circuit court of Sangamon County against Allied and certain individuals seeking damages for slander of title, and Allied by way of counterclaim asserted the document dated December 1, 1946, and demanded specific performance of the agreement. On December 8, 1955, appellants brought an action No. 1236-55, in the same court against Allied asking that the letter dated December 1, 1946, be set aside as a cloud on their title to the premises. The trial court ordered that the counterclaim in the action at law, No. 1227-55, be consolidated with the equitable action, No. 1236-55.

Plaintiffs urge that Allied is not entitled to specific performance because it failed to prove diligence in claiming its rights and, akin to that argument, that Allied's silence

and failure to take any affirmative action while plaintiffs were improving the property makes the decree harsh and oppressive. In presenting these contentions plaintiffs do not rely upon *laches* or estoppel but rather seek to invoke the rule that the equitable relief of specific performance should be denied where enforcement would be inequitable or unconscionable.

Specific performance rests in the sound discretion of the court and is determined from all surrounding facts and circumstances of each case. (*Sugar* v. *Froehlich*, 229 Ill. 397; *Schiff* v. *Breitenbach*, 14 Ill.2d 611.) In this case Allied sold the property, which it carried on its books at $250, for $1800 after having offered it as a gift. The questioned letter agreement, which we have held was not rescinded, was retained. By its officers' own admission there was a "flood of publicity" in the newspapers in 1951 about the proposed improvement and as a result they quietly recorded the document. Levelling and grading of a street was commenced early in 1955, the property was subdivided and the plat recorded in June 1955. Construction of streets, sewers and dwellings continued well into the month of August 1955. During all this time Allied stood by without asserting any claim verbally or otherwise nor did it ever assert one until Fitzpatrick made inquiry about the recorded document. While its officers do not deny actual knowledge of the improvements, they argue that there was insufficient proof of such knowledge. It seems inconceivable that they would know of the proposed subdivision in 1951, which was then only in the planning stage, and not know of the grading, street and sewer construction, platting, annexation to the city of Springfield and development of the tract in 1955. This is especially true since they were engaged in the building-material, contracting and real-estate business. We are of the opinion that the record bears out knowledge on their part.

Having determined that the agreement to reconvey is

valid and subsisting, we reach the question of whether equity should order specific performance of that agreement without providing for reimbursement for the enhancement of value to the land by reason of improvements costing approximately $30,000?

The rules relating to the necessity of reimbursement as a condition to equitable relief in Illinois have long been established. While, as a general rule, if a stranger improves the land of another without consent, the improvement becomes the property of the owner, (*Olin* v. *Reinecke,* 336 Ill. 530,) neverthless, equity will not hesitate to soften the harshness and rigor of the rule of law, when the circumstances of the case require it to be done to meet the ends of justice. (*Cable* v. *Ellis,* 120 Ill. 136.) We recently stated the equitable rule in *Elder* v. *Clarke,* 385 Ill. 335, 339: "The rule is that where improvements of a permanent character are made in good faith by one in possession, believing himself to be a *bona fide* purchaser, or an owner for full value, and under circumstances justifying such a belief, and the expenditure is reasonable and of benefit to the estate, an allowance may be made in a court of equity, where title is found to be in another." See also *Gilbreath* v. *Dilday,* 152 Ill. 207; *Lagger* v. *Mutual Union Loan and Building Ass'n,* 146 Ill. 283; *Hayes* v. *Davis,* 307 Ill. App. 440; Anno. 57 A.L.R. 2d 263.

In the case at bar, Allied, by its counterclaim, has sought the aid of a court of equity to decree specific performance of its agreement for reconveyance. Having done so, it must be bound by the foregoing equitable principles. Plaintiffs were not trespassers, but entered onto the land and made improvements under a claim of clear title, supported by a deed containing no restrictions. Although plaintiffs had knowledge of the existence of the collateral agreement and its recording in 1951, they steadfastly maintained that the agreement was rescinded and that they had clear title. Allied, on the other hand, waited to enforce its

rights until after plaintiffs had substantially improved the property.

It is our opinion, based upon all the facts in the record, that Allied is entitled to specific performance, but conditioned upon payment to plaintiffs of an amount equal to the actual enhancement of market value of the premises caused by the improvements made by plaintiffs. Allied also may have the alternative remedy of damages for breach of the agreement to reconvey. The measure of damages under such a theory should be the value of the land without the improvements, less the $1800 previously paid. Upon remandment it will be necessary to take evidence to establish value. At the same time, the trial court should grant plaintiffs' motion to interplead the mortgagee and other lien holders as necessary parties.

The decree of the trial court is, therefore, reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded, with directions.*