Peter Weck and Maude Weck, Plaintiffs-Appellees, v. A:M Sunrise Construction Co., a Corporation, Defendant-Appellant.

Gen. No. 48,498.

First District, Second Division.

June 12, 1962.

Rehearing denied September 11, 1962.

Groble and O'Flaherty, of Chicago, for appellant.

Rappaport, Clorfene & Rappaport, of Chicago (Hamilton Clorfene, of counsel), for appellees.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court:

Plaintiffs as assignees of a real estate contract filed a verified complaint in the Municipal Court of Chicago seeking reimbursement from the defendant construction company for its alleged failure to complete the construction of the residence in question in a workmanlike manner and to assume the assessment against the property for the construction of street improvements.

The court overruled defendant's motion to dismiss, the defendant filed its verified defense, and the case proceeded to trial before a jury. From the pleadings and the testimony it appeared that in the early part of March 1955 plaintiffs, their daughter, and her husband inspected premises at 2628 West 94th Place, Evergreen Park, which were for sale by the defendant. Subsequently, on March 14, 1955, plaintiffs' daughter and son-in-law, Dorothy and Rudolph Fischer, Jr., entered into a real estate sale contract with the defendant as seller. There is a conflict in the evidence as to the state of completion of the improvements at that date; Weck testified that the premises were about seventy-five per cent complete at that time, defendant's president testified that the premises were completed when the painting and decorating were finished on March 3, 1955, eleven days before the contract was entered into.

The transaction with respect to the Fischers was closed on April 11, 1955, at which time a trustee's

deed dated March 1, 1955 from Pullman Trust and Savings Bank, as trustee, issued to Rudolph and Dorothy Fischer; and on April 21, 1955 a warranty deed issued from Rudolph and Dorothy Fischer to plaintiffs Peter and Maude Weck. At the closing the defendant delivered its letter to plaintiffs stating that in consideration of the payment of the balance of the purchase price upon the premises it agreed (1) to file the two deeds with the Registrar of Titles of Cook County, (2) to cause a Torrens certificate to issue in the name of plaintiffs subject to 1954 general taxes and a certain easement, and (3) to pay the 1954 general taxes.

█ With reference to plaintiffs' claim against defendant in the amount of $600, representing the assessment made September 21, 1959 against the property for the construction of street improvements, the trial judge indicated that defendant should not be held liable for a property assessment made after the date of closing. To support their claim, plaintiffs rely on a handwritten provision inserted in the contract at the insistence of Peter Weck: "Street Paid for according to McKeowns Subdivision Plan, Improvements and assessments Include[d] in above Purchase Price." This qualification must be read in connection with the standard itemized liens and encumbrances of the real estate sale contract, the fifth item reading "Installments for Special Assessments falling due after date of closing," and the sixth "for Improvement not yet completed at said premises." It would be inequitable to hold that the McKeowns provision bound defendant to pay for an assessment made some four and one-half years after the sale contract was signed.

Peter Weck, who had been shown specifications of the house by a salesman of the defendant corporation, testified to complaints as to the condition of the building made to defendant's superintendent beginning in

July of 1955. Plaintiff testified that the building was not completed at the time of purchase, and stated that after the defendant corporation finished its construction work the building was not habitable. The Fischers moved into the house in July of 1955, but because of numerous defects they were unable to remain and spent the winter of 1955–1956 with the Wecks. After the Fischers moved into the new house, Mr. Weck testified, they found that the plumbing in the bathroom leaked; that there was water leakage in the basement and through the roof; that the plaster on the bedroom ceiling was cracked; that the kitchen cabinets were unsatisfactory; that the rear door could not be used; and that a driveway and street curbing had to be installed. On August 23, 1955 plaintiff sent a letter to defendant in which he itemized the defects. Plaintiff never signed the completion certificate submitted to him by the defendant corporation.

Robert King, in the general contracting business under the name of Pullman Construction Company, at Mr. Weck's request gave him an estimate as to the cost of repairs necessary to make the premises habitable, subsequently did the work in accordance with his estimate, and was paid in full by Mr. Weck. Mr. King testified that he first saw the property in June of 1956; he stated that he was not familiar with the condition of the building or the land on April 21, 1955, the date the transaction was closed. He testified that a waterproofing compound was applied to stop water leakage through the side walls and floor of the basement. The roof had to be repaired to prevent water leakage. As a result of the roof leakage, a bedroom ceiling cracked and caved, and had to be repaired. Mr. King sent a plumber over to stop the leak in the bathroom. Mr. King characterized the original kitchen cabinets as "defective"; they were so warped

the doors would not close, and Mr. King replaced them. The rear door failed to lock properly and had to be reset and rehung. A driveway was installed along the side of the house, and street curbing was put in. Mr. King filled in a hole six feet deep that was the width of the lot and extended the length of the back yard. A contractor of sixteen years' experience, he testified that all the repairs he made were necessary to the building and the grounds at the time he made his original inspection, and that his charges in the amount of $1628.50 were reasonable.

Charles Joseph Marrin, the owner and president of A:M Sunrise Construction Company, the builder and defendant corporation, admitted receiving a letter of complaint from Peter Weck. Mr. Marrin testified as to the dates of completion of the various stages of construction—the roof was completed in October 1954; the windows were installed in November of 1954; the plastering was completed in November of 1954; the concrete floor in the basement was also installed in November of 1954; the finished wood flooring and the bathroom ceramic floor were installed in January of 1955; the wood trim and the kitchen cabinet work were likewise completed in January of 1955; the tile floor in the kitchen was installed in February of 1955. The Voral Company, which took care of the tile work and the Formica work, also did both the interior and exterior painting, and completed its work early in March 1955. Mr. Marrin testified that the painting and decorating is usually the last work to be done, and he believed that it was the last work done on the building in question. He stated that he personally inspected the building; that he did not see any warped doors in the kitchen cabinets; that there was not a six-foot hole at the rear of the property extending the width of the lot and about twenty feet in length; that he did not see any cracks in the ceiling plaster. He

testified that he made it a practice to inspect his buildings weekly until they were turned over to the purchaser, and that this building was completed in the first week of March 1955. Representatives of some of the various trades working on the building were called as witnesses, and their testimony substantially corroborated Mr. Marrin's with respect to dates of completion.

■ Much of the pleading, the proof, and the argument was directed to the state of completion of the building on the date of the sale contract and to the quality of the workmanship; the evidence was in sharp conflict on these issues. Thus they became questions of fact for the jury who heard and observed the witnesses and had an opportunity to assess their credibility. The jury found for the plaintiffs, and there is sufficient evidence in the record to warrant their so finding.

Defendant urges that, as a matter of law, the trial court should have rendered judgment in its favor notwithstanding the verdict or, in the alternative, should have granted a new trial, on the theory that when parties to a real estate sale contract reduce their agreement to writing, the writing becomes the whole agreement of the parties; that all prior negotiations and understandings are merged into the written agreement and become extinguished; and that there is no implied warranty as to the condition of real estate sold. Plaintiffs contend that their evidence in no way varied the terms of the contract, but rather that it proved that the house as finally constructed was not fit for habitation, and they argue that the real consideration for the contract was the purchase and sale of a residence with all appurtenances attached, and so completed as to be habitable. Briefly, the question becomes whether or not the seller should be held liable to deliver to the purchaser a house fit for habitation.

There is a comprehensive discussion of this problem by Allison Dunham in an article entitled Vendor's Obligation as to Fitness of Land for a Particular Purpose, appearing in 37 Minn L Rev 108 (1952–1953). He concluded (p 125):

> "[I]f no matter of title is involved, the sale of an incomplete building seems to impose on the vendor a duty to make the premises fit for the ordinary purposes for which the building is being constructed and if the sale is from a model there is a duty to make the building sold conform to the model and to be reasonably fit for its ordinary purposes. This duty seems to survive acceptance of the deed."

In Chicago Title & Trust Co. v. Wabash-Randolph Corp., 384 Ill 78, 51 NE2d 132 (1943), a controversy arose as to whether there was appurtenant to lots owned by plaintiffs a perpetual easement of ingress and egress over lots owned by defendants. It was defendants' contention that the two contracts and the two deeds made in consummation of the contracts must be, as to the question of easement, considered together; and that if there was a merger, then the absence of an easement provision in the deed would render such provision in the contract ineffective. The parties on both sides recognized the principle that distinguishes those cases where the delivery of the deed constitutes a complete fulfillment of all the terms of the contract, and those cases where the contract contains provisions which delivery of the deed does not execute and as to which there is no merger. The court stated (p 87):

> "The principles in reference to merger are well settled. If the terms of a contract for sale of real estate are fulfilled by delivery of the deed, there is a merger, (Weber v. Aluminum Ore Co.,

304 Ill 273,) but if there are provisions in the contract which delivery of the deed does not fulfill, then the contract is not merged in the deed as to such provision and the contract remains open for the performance of such terms. (Trapp v. Gordon, 366 Ill 102; Biewer v. Mueller, 254 Ill 315; Shelby v. Chicago and Eastern Illinois Railroad Co. 143 Ill 385.) . . ."

A leading English case, frequently discussed, and similar on the facts to the case before us, is Miller v. Cannon Hill Estates, Ltd., 2 KB 113 (1931). Defendants pleaded that the contract was concluded by the written agreement dated March 6, 1928, duly completed by instrument of transfer under the Land Registration Act on August 2, 1928; that the local surveyor had certified the premises as fit for habitation; that insofar as there were any defects they were due to abnormally wet weather; that the plaintiff inspected the premises between February and August 1928; and that he bought the house relying on his own judgment. It was held that in a contract with builders for the purchase of a house to be erected or in course of erection there is an implied warranty by the vendors that the house shall be built in an efficient and a workmanlike manner and of proper materials, and that it shall be fit for habitation; and further that a representation by builders in conversation with a prospective buyer that all houses on the estate are of the best material and workmanship may amount to a warranty collateral to a subsequent formal contract, for breach of which an action will lie. In the course of his opinion the reviewing judge said (pp 120-121):

". . . I think that it is plain from the whole of the facts of the case that the law will imply a warranty that the house which was to be built by the defendants for the plaintiff should be a

390

house which was habitable and fit for human beings to live in. I think it is quite clear law that if one buys an unfurnished house, there is no implication of law, and there is no implied contract that the house is necessarily fit for human habitation. . . . if he wants to buy a house which is fit for habitation, then he must expressly stipulate that the house shall be fit for habitation. He can always get an express warranty that an unfurnished house is fit for habitation, if he is prepared to pay the price which attached to an unfurnished house which has such a warranty, rather than the price which a vendor is willing to take for an unfinished house without such a warranty. The position is quite different when you contract with a builder or with the owners of a building estate in course of development that they shall build a house for you or that you shall buy a house which is then in the course of erection by them. There the whole object, as both parties know, is that there shall be erected a house in which the intended purchaser shall come to live. It is the very nature and essence of the transaction between the parties that he will have a house put up there which is fit for him to come into as a dwelling-house. It is plain that in those circumstances there is an implication of law that the house shall be reasonably fit for the purpose for which it is required, that is for human dwelling. Our attention has been called to the well known passage from the judgment of Bowen L. J. in The Moorcock (1) as to the cases in which a warranty will be implied in law. Can the parties here be thought, when the plaintiffs were bargaining for a dwelling-house which was to be erected in accordance with the character of the other dwelling-houses in the neighbourhood, to have

been bargaining for something which was no protection in wet weather? The jury have found here that this house was in such a leaking or porous condition that it was quite unfit for human habitation. If the plaintiff has no implied warranty that it shall be fit for human habitation, then the consideration for which he bought this house wholly fails.

"(1) 14 PD 64, 68."

Declaring that merger was a matter of the intention of the parties as shown by their declarations, acts, and conduct at the time of the agreement, the court in Bradley v. Brucker, 69 Montg Co LR 38 (Pa 1952), held that a contract to convey realty, including a provision for the construction of a house upon such land, and containing a provision guaranteeing the cellar would be dry, was not merged in a deed subsequently executed having no such provision. The court declared that it was clear from the circumstances that no merger was intended, the vendees having in their negotiations insisted upon a dry cellar, informing the vendor of an illness in the family which necessitated a dry condition, and leading to the insertion of the provision with respect to the dry cellar in the agreement of sale. The court remarked (pp 42–43):

"Such conduct unequivocally demonstrates the interpretation that the parties had placed on the language, namely, that the cellar would be dry for a reasonable time after habitation by plaintiffs and that execution and delivery of the deed was not intended to terminate all rights and obligations emanating from the agreement of sale."

Apparently recognizing the rule that delivery of a deed is not necessarily a complete execution of a contract of sale, particularly where the contract contains

provisions with respect to the construction of a house according to certain specifications upon the property to be conveyed, the court in Zanphir v. Bonnie Meadows, Inc., 127 NYS2d 269 (Sup Ct 1953), declaring that whether the deed merged the prior contract was a matter of intention, held that the intention of the parties to effect a merger was clearly shown where the parties, at the time title was conveyed, entered into an agreement whereby a certain sum was to be put in escrow pending proper construction of the house, the escrow agreement, rather than the original contract of sale, being relied upon to survive the deed.

In Stevens v. Milestone, 190 Md 61, 57 A2d 292 (1948), parol testimony tended to establish a collateral agreement made at the time of the execution of the deed, not inconsistent with the deed, and consistent with the original written agreement of sale and oral building agreement, to the effect that the house upon property sold would be insulated and would contain two front cellar windows. The reviewing court, being of the opinion that there was sufficient evidence to go to the jury, reversed the judgment of the trial court in favor of defendants and remanded the case for a new trial.

In Weinberg v. Wilensky, 26 NJ Super 301, 97 A2d 707 (1953), the plaintiffs and the defendants entered into a written contract consisting of two distinct parts, each of which was signed by the parties, the first part being in the usual form of a contract for the sale of lands, the second part containing specifications regarding the erection of a building upon the land. After the closing of title and the execution of a deed to the property, the vendees discovered that the foundation walls to the house had not been waterproofed, although the plans called for waterproofing, and that the piers underneath the steps had not been constructed to the depth required by the plans. In

their action to recover damages for the breach of the contract because of these and other defects in the construction, the trial court had found as a fact that the defects with respect to the waterproofing and the piers were latent and could not have been discovered by plaintiffs until there were surface manifestations, and accordingly entered judgment for plaintiffs for the resulting damages on these items. The reviewing court, in affirming the judgment, said that an agreement of a grantor to complete an unfinished building upon the premises to be conveyed is so far collateral to the conveyance as not to be merged in the deed.

Pointing out that a contract for the sale of property, upon which homes were to be erected to the satisfaction of the Federal Housing Administration, imposed on the vendor both the obligation to convey and the obligation to construct homes in accordance with FHA requirements and in conformity with local and state building codes, the court in Allen v. Currier Lumber Co., 337 Mich 696, 61 NW2d 138 (1953), held that where it was shown that the houses conveyed did not meet the specifications, the vendees were entitled to damages, by exception to the general rule of merger, only the covenant as to conveyance being satisfied by the delivery of the deed.

In Greenfield v. Liberty Const. Corp., 81 NYS2d 550 (Sup Ct 1948), the court held that defendant was not entitled to summary judgment in an action for breach of contract for the sale of a dwelling to be erected by defendant on described realty in accordance with plans prepared by defendant's architect, on the ground that the contract merged in the deed by which defendant had conveyed the realty to plaintiff, since the contract was superseded by such deed only as to such provisions as were covered by the conveyance made and in pursuance of its terms. The court relied

on Lambert v. Krum, 121 Misc 170, 200 NYS 452 (Sup Ct 1923), which said (p 459), after making an extensive review of New York cases on the subject:

> "From these cases the following rule may be deduced: A contract for the sale of real estate is merged in the deed when the latter is intended to be accepted in full performance of the former. This intention may be derived from the instruments alone or from them and the surrounding circumstances. Collateral undertakings, not a part of the main purpose of the transaction, that is, the conveyance of real estate, by their very nature, show an intent that they should not be merged into the deed, and therefore are not extinguished by the acceptance of the deed."

In Edison Realty Co. v. Bauernschub, 191 Md 451, 62 A2d 354 (1948), plaintiffs purchased land and a house under construction by defendants in reliance on an oral agreement collateral to the written contract of sale that the house would be completed and would contain all the features of a sample house in defendants' development. Plaintiffs alleged that after taking possession they discovered that the house was not completed in accordance with the contract; upon defendants' failure to remedy the alleged defects, plaintiffs commenced an action for specific performance and other equitable relief. The court pointed out that while the acceptance of a deed creates a prima facie presumption that it is an execution of the entire agreement for the sale of realty and that the rights of the parties in relation to the agreement are to be determined by the deed, parol evidence may be given of collateral facts relating to the agreement for the sale of the realty even though the deed has been executed, if the facts are consistent with the deed and do not tend to contradict it.

Likewise in Laurel Realty Co. v. Himelfarb, 194 Md 672, 72 A2d 23 (1950), the court held that acceptance of the deed and payment of the purchase price did not effect a merger of the agreement in the contract of sale to construct a house according to specifications upon the property sold, saying that the rule of merger was not applicable where there were collateral agreements not inconsistent with the deed or where it appeared that the execution of the deed was only a partial execution of the contract.

In 17 CJS Contracts § 329, the writer says in a footnote (p 781): "In building and construction contracts it is implied that the building shall be erected in a reasonably good and workmanlike manner and when completed shall be reasonably fit for the intended purpose."

■ In the case at bar, the jury found for plaintiffs on the facts. The authorities we have discussed support plaintiffs' position that the facts of this case bring it within the exceptions to the rule of merger, and that the provisions of the collateral agreement entitled them to a habitable dwelling.

■ Plaintiffs established that $1628.50 was a reasonable charge for the repairs which were necessary to make the house habitable and to finish the grounds. The jury returned a verdict assessing plaintiffs' damages in the amount of $1793 and costs; judgment was entered on the verdict in that amount, together with costs. We have no way of ascertaining the reason for the slight discrepancy between the amount of the verdict and the proof of damages, but it would not warrant reversal. Accordingly, the judgment of the Municipal Court is affirmed.

Judgment affirmed.

BRYANT, J., concurs.

BURKE, J., dissenting:

The contract is for the sale of real estate. It is not a contract to construct a building. The contract does not state that the premises possess or will possess a driveway. There is no reference in the contract to the state of completion in the building and there is no undertaking by defendant to do any additional work. As a general rule a deed made in full execution of a contract of sale of land merges the provisions of the contract therein, including all prior negotiations and agreements leading up to the execution of the deed, but the rule is subject to exceptions, and independent and collateral agreements are not merged. 26 CJS, Deeds, p 82. Trapp v. Gordon, 366 Ill 102, 7 NE2d 869; Stromsen v. Stromsen, 397 Ill 260, 263, 73 NE2d 272. If there are provisions in the contract which delivery of the deed does not fulfill, the contract is not merged in the deed as to such provisions and remains open for the performance of such terms. Chicago Title & Trust Co. v. Wabash-Randolph Corp., 384 Ill 78, 87, 51 NE2d 132.

The transaction was closed on April 21, 1955. Neither the deed to the Fischers nor the deed from them to plaintiffs contains any undertaking by defendant to complete any work upon the premises. There are no unfulfilled provisions in the contract. The terms of the contract were fulfilled by delivery of the deed. This position is further supported by an exhibit introduced by plaintiffs, a letter from defendant, by its attorney, issued at the closing, stating what defendant undertakes to do after the closing, namely, (1) file deeds and mail them to attorney for plaintiff; (2) cause a Torrens certificate to issue in the names of plaintiffs subject to 1954 general taxes and a described easement; and (3) pay 1954 general taxes. This exhibit refutes the argument presented by plaintiffs.

In support of its contention that the consideration in the written instrument can be explained, varied

and contradicted by parol proof, plaintiffs cite three cases, none of which deals with the question of merger in a situation where a real estate sales contract has been reduced to writing and contains within itself the entire contract of the parties. One of these cases deals with an action on a life insurance policy, one with a breach of contract between two persons who had agreed to develop land in which the court construed the meaning of the language in the contract, and one where a written contract for the sale of real estate recited that a residence was being erected thereon and which provided that when the house passed final F H A inspection it was to be accepted by the purchaser. Defendant did not comply with certain F H A requirements. The court admitted into evidence the written contract and the written F H A commitments and construed these documents together as imposing a duty upon the defendant which endured beyond the delivery of the deed. None of these cases is helpful to plaintiffs' case. In the case at bar there is no writing ancillary to the contract which in any way imposed a duty upon the defendant other than issuing a deed.

In Kerr v. Parsons, 83 Ohio App 204, 82 NE2d 303, the court said (305):

"Ordinarily, there is no implied warranty as to the condition of real estate sold or leased, and oral evidence of a warranty would not be admissible to add to a deed or release. Thompson on Real Property, Perm Ed Vol 4, Sections 1545, 1546. An express warranty, to be enforceable, would be required to be in writing to satisfy the statute of frauds."

Plaintiffs and the majority opinion rely strongly on the case of Miller v. Cannon Hill Estates, Ltd., (1931) 2 Kings Bench 113. This and other cases cited by the plaintiffs do not support their position under the factual situation in the instance case. The cases deal with situations in which a plaintiff expressly and in

398

writing contracted with a defendant for the construction of a building, or to perform work upon a building. These cases are inapplicable here. Defendant was not to construct a building or to perform work for the plaintiffs. The testimony of Peter Weck, one of the plaintiffs, that the house was not built for his daughter nor for him, negates plaintiffs' theory of implied warranty. I think that the judgment should be reversed and the cause remanded with directions to enter judgment against plaintiffs.